Opinion issued October 20, 2005 



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-01028-CV
__________
 
RICHARD C. MACDONALD, Appellant
 
V.
 
WILLIAM S. WARNER, M.D. AND ROMEO CASTILLO, M.D., Appellees
 

 
 
On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 03CV0484
 

 
 
MEMORANDUM OPINION
          Appellant, Richard C. MacDonald, challenges the trial court’s rendition of
summary judgment in favor of appellees, William S. Warner, M.D. and Romeo
Castillo, M.D., in his suit alleging medical malpractice. In two points of error,
MacDonald contends that the trial court erred in granting Warner’s and Castillo’s
summary judgment motion because Warner and Castillo failed to establish, as a
matter of law, their affirmative defenses under section 101.106 of the Texas Tort
Claims Act (the “Act”)


 and section 312.007 of the Texas Health and Safety Code.



We affirm.
Factual and Procedural Background
          In April 2001, MacDonald was treated at the UTMB-Galveston (“UTMB”)
emergency room for a wound to his foot. Warner, a UTMB faculty member working
in the emergency room, and Castillo, a UTMB resident on rotation in the emergency
room, examined and treated MacDonald. MacDonald filed suit against UTMB,
Warner, and Castillo on April 25, 2003, alleging that “UTMB, its agents, servants,
and employees were negligent in failing to promptly and properly perform the
necessary surgical procedure and/or in failing to properly and promptly refer [him]
to the proper orthopedic physician,” and that such negligence caused him personal
injuries.
          UTMB filed a plea to the jurisdiction and motion to dismiss and sever, which
the trial court granted.


 Warner and Castillo subsequently filed a summary judgment
motion, contending that MacDonald’s claims against them individually were barred
by section 101.106 of the Act, or, alternatively, that MacDonald’s claims were barred
by section 312.007(b) of the Texas Health and Safety Code. Without specifying the
grounds on which it relied, the trial court granted Warner’s and Castillo’s summary
judgment motion. 
Standard of Review
          To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law because there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548 (Tex. 1985); Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663, 670
(Tex. App.—Houston [1st Dist.] 1996, no writ). A movant must either negate at least
one essential element of the non-movant’s cause of action, or prove all essential
elements of an affirmative defense. Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). In conducting our review, we assume that all evidence favorable to the
non-movant is true and indulge every reasonable inference and resolve all doubts in
favor of the non-movant. Nixon, 690 S.W.2d at 548–49. When a trial court’s order
does not specify the grounds under which summary judgment was granted, we will
affirm the judgment on any meritorious theory advanced in the motion. Harwell v.
State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).
Governmental Immunity
          In his first issue, MacDonald contends that Warner and Castillo failed to
establish their affirmative defense under section 101.106 of the Act as a matter of law
and that there was a genuine issue of material fact on one or more elements of their
affirmative defense under section 101.106.


 
          Former section 101.106 provided:
A judgment in an action or a settlement of a claim under this chapter
bars any action involving the same subject matter by the claimant
against the employee of the governmental unit whose act or omission
gave rise to the claim.
 
See Act of May 17, 1985, 69th Leg., ch. 959, § 1, 1985 Tex. Gen. Laws 3305
(amended 2003) (current version at Tex. Civ. Prac. & Rem. Code § 101.106 (Vernon
2005)). 
          Under section 101.106, when a claim against a governmental entity is
dismissed on grounds of governmental immunity, any claims involving the same
subject matter brought against employees of that governmental entity must also be
dismissed. Harris Co. v. Sykes, 136 S.W.3d 635, 640–41 (Tex. 2004); Dallas Co.
Mental Health and Mental Retardation v. Bossley, 968 S.W.2d 339, 344 (Tex. 1998);
Dalehite v. Nauta, 79 S.W.3d 243, 245–46 (Tex. App.—Houston [14th Dist.] 2002,
pet. denied). MacDonald does not dispute that the trial court’s order granting
UTMB’s plea to the jurisdiction constitutes a judgment under section 101.106 and
that, pursuant to section 101.106, this judgment bars any claims against governmental
employees involving the same subject matter as the claims made against UTMB. 
However, MacDonald does dispute whether Warner and Castillo established their
status as governmental employees entitled to immunity under section 101.106.           “Employee” is defined to mean
a person, including an officer or agent, who is in the paid service of a
governmental unit by competent authority, but does not include an
independent contractor, an agent or employee of an independent
contractor, or a person who performs tasks the details of which the
governmental unit does not have the legal right to control. 
 
Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2) (Vernon 2005).
          In support of their motion for summary judgment, Warner and Castillo attached
copies of excerpts from their depositions as well as an affidavit from William Naron,
the records management analyst in the finance-employee records department of
UTMB. Warner testified in his deposition that he was a UTMB faculty member when
he treated MacDonald at UTMB. He testified that, as a faculty member at UTMB, he
would oversee the care of patients who came into the UTMB emergency room. He
confirmed that his signature appeared on MacDonald’s emergency room records. 
Castillo testified in his deposition that he was employed by UTMB at the time he
treated MacDonald in the UTMB emergency room, and that his treatment of
MacDonald was performed in his capacity as a UTMB employee. Naron testified
that he was the UTMB records management analyst in the finance-employee records
department and that he had personal knowledge of the facts stated in his testimony. 
Naron further testified that Warner was a paid employee at UTMB from September
4, 1999 to July 21, 2003; that during that time UTMB employed Warner as an
emergency room faculty physician; that Castillo was a paid employee of UTMB from
October 4, 2000 to August 12, 2003; and that during that time UTMB employed
Castillo as a resident in family medicine.


 
          MacDonald attached Warner’s and Castillo’s answers to interrogatories to his
summary judgment response. Warner stated in his answers to interrogatories that his
previous employer was “UTMB, Division of Emergency Medicine.” In response to
an interrogatory asking Warner to identify any physicians whom he supervised during
MacDonald’s treatment, including their job title and employer, Warner answered
Castillo, “Family Medicine Resident, UTMB, Galveston.” Castillo stated in his
answers to interrogatories that he was the emergency room intern who examined and
treated MacDonald, and Castillo described his “employment relationship” with
UTMB as “a family medicine intern completing his rotation in [UTMB’s] emergency
room.” MacDonald also attached a letter dated October 28, 1999 from UTMB to
Warner appointing Warner as a part-time associate member of the medical staff at
UTMB, and noting that his appointment had been approved by the executive
committee of the medical staff and by the executive vice chancellor for health affairs
of the University of Texas System. The letter stated that Warner’s appointment was
for a period of two years. MacDonald also attached a copy of the “University of
Texas Medical Branch House Staff Agreement,” appointing Castillo as a
resident/fellow at UTMB at the postgraduate year 1 level and stating, among other
details, that the appointment would begin on October 4, 2000 and end on October 3,
2001, that Castillo would receive salary and benefits “as established by UTMB for
its house staff” subject to satisfactory participation in the residency program, that the
salary established by UTMB was subject to certain deductions, and that additional
information regarding salary would be found in the House Staff Manual. The
agreement stated that, as a house officer of UTMB, Castillo would be expected “to
perform such duties and responsibilities as may be assigned” and that his performance
would be subject to the rules and regulations of the University of Texas System and
the local rules and regulations of UTMB contained in the “Handbook of Operating
Procedures.” The agreement further provided that the “position description and basic
responsibilities of a resident for which UTMB will provide an opportunity are found
in [the appendix] of the ‘UTMB Hospitals–General Information for House Staff.’” 
Finally, the agreement provided that Castillo’s performance would be reviewed and
evaluated by faculty at least semiannually, that house staff could be dismissed from
the program during the term of the agreement upon the determination of the faculty
that their level of performance or professionalism did not meet certain standards and
was unsatisfactory, and that any such dismissal would be handled in accordance with
UTMB procedures. The agreement was signed by the program director of the family
medicine residency/fellowship at UTMB and was also signed by Castillo, as “house
officer.” Finally, MacDonald attached a copy of the Bylaws and Rules and
Regulations of the Medical Staff for UTMB, which contained sections on medical
staff membership, corrective action, and suspension. 
          After reviewing this summary judgment evidence, we conclude that
MacDonald’s contention that the evidence revealed almost nothing about the nature
of the employment relationship between UTMB and Warner and Castillo is without
merit. While the evidence did not provide exact details on how Warner and Castillo
were paid, the evidence conclusively established that UTMB was the governmental
entity that compensated Warner and Castillo for their medical services performed at
UTMB. This evidence is wholly uncontroverted by MacDonald. Thus, we hold that
this evidence establishes as a matter of law that Warner and Castillo were employees
of UTMB and, as such, were entitled to immunity under section 101.106. 
          We must also reject MacDonald’s contention that Castillo and Warner should
not be entitled to immunity under section 101.106 because there is no proof that
UTMB controlled the details of their work and because their treatment of MacDonald
required the exercise of discretionary decision-making. The Texas Supreme Court
addressed and rejected similar arguments in Murk v. Scheele, 120 S.W.3d 865 (Tex.
2003). In Murk, the plaintiff filed a medical malpractice suit against the University
of Texas Health Sciences Center and two of his treating physicians, one a UT faculty
member and the other a UT graduate student and a resident. Id. at 866. The trial
court dismissed UT on grounds of immunity, and both physicians filed motions for
summary judgment based on immunity under section 101.106. Id. The plaintiff
argued that Murk, the UT faculty member, was excluded from the statutory definition
of “employee” under the Act because his exercise of independent professional
judgment as a treating physician was outside UT’s right of control. Id. at 867. 
Finding that the plaintiff’s argument “[swept] far too broadly,” the Texas Supreme
Court observed that “[t]he Act’s definition of employee does not require that a
governmental unit control every detail of a person’s work.” Id. The court noted that
the summary judgment evidence showed that Murk practiced for UT as a member of
its faculty, that he was compensated by UT, and that his medical decisions in the
treatment of patients were subject to regimens prescribed by UT. Id. While
recognizing that a physician was required to make medical decisions using
professional judgment, the court held that the necessity for that judgment did not, by
itself, vitiate UT’s right to control the details of Murk’s practice. Id.


 
          Similarly, in Dalehite, the plaintiff argued that the defendant-physician was not
a governmental employee covered by section 101.106 because UTMB, his employer,
did not control the details of his diagnosis or treatment. 79 S.W.3d at 245–46. In
reviewing the trial court’s order granting summary judgment, the court noted that the
physician had presented the trial court with undisputed evidence that he was a
chairman of the UTMB department of neurosurgery, worked as a full-time professor
at UTMB, treated patients and instructed medical students at UTMB, signed an
employment contract with UTMB, and was paid a salary and provided benefits and
insurance by UTMB. Id. at 245. Our sister court held that this evidence established
that the physician was an employee of UTMB, and further held that the physician’s
exercise of discretion in diagnosing and treating patients did not make him an
independent contractor. Id. at 245–46.


 Like the courts in Murk and Dalehite, we
reject the argument that Warner and Castillo may not be characterized as employees
under section 101.106 because they were required to exercise discretion and use
independent judgment in making decisions concerning MacDonald’s diagnosis and
treatment.
          Having held that Warner and Castillo established their affirmative defense
under section 101.106 of the Act as a matter of law, we overrule MacDonald’s first
issue.
 
 
 
 
                                                         Conclusion
          Having held that summary judgment was properly granted under section
101.106 of the Act, we need not address Macdonald’s second issue. We affirm the
judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.