**Opinion issued August 30, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00824-CV

————————————

**CONNIE HINOJOSA, Appellant**

**V.**

**METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TEXAS, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-48853**

---

## MEMORANDUM OPINION

Connie Hinojosa brings this interlocutory appeal of the trial court's order granting Metropolitan Transit Authority of Harris County, Texas (Metro)'s plea to

the jurisdiction.[1] Because Metro conclusively established that the driver of the Metro bus aboard which Hinojosa claims to have been injured was not Metro's employee, the Texas Tort Claims Act (TTCA) has not waived Metro's governmental immunity.

We affirm.

## Background

According to her live pleading, Connie Hinojosa had just boarded a Metro bus and was walking to her seat when the bus driver, Merica Eubanks, made a sudden and abrupt stop, causing Hinojosa to fall.

Hinojosa sued Metro for injuries she claims to have sustained as a result of her fall, alleging that Metro is liable for Eubanks's negligence.[2] Hinojosa's amended petition recognizes that, as a governmental unit,[3] Metro is shielded from liability, but Hinojosa asserts that the TTCA has waived Metro's immunity here

---

[1]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (West Supp. 2017) (authorizing appeal from interlocutory order granting or denying a governmental unit's plea to the jurisdiction).

[2]     Hinojosa also sued Eubanks and her employer, First Transit, but the trial court granted their motion for summary judgment.

[3]     Hinojosa does not dispute Metro's status as a governmental unit. *See also Metro. Transit Auth. of Harris Cty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] Feb. 27, 2018, no pet.) (mem. op.) ("As a governmental unit, Metro is immune from suit absent an express waiver of governmental immunity.").

2

because she alleges negligent operation of a motor-driven vehicle by a Metro employee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011).

Metro filed a plea to the jurisdiction, arguing that its immunity is not waived because Eubanks was not a Metro employee, but rather an employee of First Transit, Inc., with whom Metro contracted to operate and manage some of its bus routes, including the one at issue.

In support of its plea to the jurisdiction, Metro attached excerpts from Eubanks's deposition transcript, in which she stated that she was employed and paid by First Transit. Metro also attached its contract with First Transit, which specifies that First Transit is "an independent Contractor in all its operations and activities" and that the employees furnished by First Transit to perform the contract are First Transit's "employees or independent subcontractors." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

Hinojosa responded that Metro's evidence was not conclusive as to who employed Eubanks, and a fact issue exists as to whether Eubanks was Metro's employee under the common law borrowed-employee doctrine.

After a hearing, the trial court granted Metro's plea to the jurisdiction, dismissing Hinojosa's claims against it with prejudice.[4]

---

[4] The trial court's order also severed Hinojosa's claims against Metro; her remaining claims against First Transit and Eubanks were later dismissed on summary judgment.

**Discussion**

Hinojosa contends that the trial court erred in granting Metro's plea to the jurisdiction because there is an issue of material fact as to whether Eubanks was Metro's employee.[5] Metro argues that because the uncontroverted evidence shows that Eubanks was not in its paid service, we must affirm. We agree with Metro.

**A.    Standard of Review**

Generally, "immunity from suit implicates courts' subject-matter jurisdiction." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016) (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)). Thus, it "is properly asserted in a plea to the jurisdiction." *Id.* (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). As subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

Where, as here, the plea challenges the existence of jurisdictional facts, the court must consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227. Our review mirrors that of a matter-of-law summary-judgment

---

[5]    Hinojosa also contends that the trial court erred in granting Metro's plea to the jurisdiction because her pleadings affirmatively demonstrated the court's subject matter jurisdiction. We need not address this issue, because, as explained below, the jurisdictional evidence conclusively establishes that Eubanks was not a Metro employee. *City of Houston v. Ranjel*, 407 S.W.3d 880, 893 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Because the evidence does not support further amendments that would cure this jurisdictional deficiency, we conclude it would be futile to remand this matter to the trial court to allow appellees another opportunity to amend their pleadings.").

motion. *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798 (Tex. 2016); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *City of Houston v. Nicolai*, 539 S.W.3d 378, 385 (Tex. App.—Houston [1st Dist.] 2017, pet. filed). We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question regarding the jurisdictional issue. *Id.* If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Id.* at 227–28. On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228.

## B. Governmental Immunity

The doctrine of governmental immunity bars litigation against the state and its governmental units unless the state consents by waiving its immunity. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013). Because any legislative waiver of immunity must be undertaken "by clear and unambiguous language," statutory waivers of immunity are to be construed narrowly. *Id.*; *see* TEX. GOV'T CODE ANN. § 311.034 (West 2013).

The TTCA provides a limited waiver of immunity for certain tort claims against a governmental unit. *Ngakoue*, 408 S.W.3d at 354. Relevant here, the TTCA imposes liability on a governmental unit for the negligence of employees acting in the scope of employment if the injury claimed "arises from the operation or use of a motor-driven vehicle" and the employee would have been personally liable under Texas law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1).[6]

## C.   Analysis

Under the TTCA, Metro is immune from Hinojosa's lawsuit if Eubanks was not acting as its employee. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. The record evidence shows that First Transit—not Metro—paid Eubanks to operate the

---

[6]     A governmental unit in the state is liable for:

> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A)    the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B)    the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011).

Metro bus on which Hinojosa was allegedly injured. Therefore, under the TTCA, Eubanks was not Metro's employee, and the trial court did not err in granting Metro's plea to the jurisdiction.

The TTCA defines "employee" for purposes of governmental immunity as:

> [A] person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2) (West 2011).

The statutory definition requires both "control *and* paid employment to invoke the [TTCA]'s waiver of immunity." *Olivares v. Brown & Gay Eng'g, Inc.*, 401 S.W.3d 363, 368 (Tex. App.—Houston [14th Dist.] 2013), *aff'd*, 461 S.W.3d 117 (Tex. 2015) (emphasis in original) (quoting *Adkins v. Furey*, 2 S.W.3d 346, 348 (Tex. App.—San Antonio 1999, no pet.)); *see also City of Houston v. Ranjel*, 407 S.W.3d 880, 890 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("The statutory definition requires both control and paid employment to invoke the TTCA waiver of immunity.").

Accordingly, if Eubanks was not in Metro's "paid service," Metro's immunity is not waived under section 101.021(1) of the TTCA. *See Marino v. Lenoir*, 526 S.W.3d 403, 406 (Tex. 2017) ("The statutory definition of employee of a governmental unit requires that the defendant 'is in the paid service' of the

claimed governmental unit."); *Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex. 2003) (affirming appellate court's holding that physician not in state university's "paid service" was not entitled to summary judgment as employee of UT); *Harris Cnty. v. Dillard*, 883 S.W.2d 166, 167 (Tex. 1994) (under "plain language" of TTCA section 101.021(1), governmental unit is not liable for actions of person who is not its paid employee); *City of Dayton v. Gates*, 126 S.W.3d 288, 293 (Tex. App.—Beaumont 2004, no pet.) ("While section 101.021(1) of the Tort Claims Act creates liability in specified circumstances, section 101.021(1) does so only when the claims stem from the action of a paid employee of the governmental unit."); *Thomas v. Harris Cnty.*, 30 S.W.3d 51, 53 (Tex. App.—Houston [1st Dist.] 2000, no pet.) ("A government is not liable for acts in its behalf of a person who is not a paid employee."); *Reynosa v. Univ. of Tex. Health Science Ctr.*, 57 S.W.3d 442, 445 (Tex. App.—San Antonio 2001, pet. denied) (doctors not paid by governmental entity were not its employees under TTCA section 101.021); *Adkins*, 2 S.W.3d at 348 (control by governmental entity did "not resolve the issue [of employee status]. . . as the statutory definition would seem to require control and paid employment to invoke the Tort Claims Act's waiver of immunity.").

To prove that it did not pay Eubanks, Metro attached an excerpt from Eubanks's deposition transcript. Eubanks stated unequivocally that at the time of

Hinojosa's accident, she was paid by First Transit.[7] Moreover, there is no evidence that Eubanks received her paychecks from Metro. *Cf. Kamel v. Sotelo*, No. 01-07-00366-CV, 2009 WL 793742,f at *5 (Tex. App.—Houston [1st Dist.] Mar. 26, 2009, no pet.) (mem. op.) ("Sotelo testified that she received her paychecks from the University of Texas and there is no evidence that Sotelo received payment from any other source. . . .").

Because this evidence conclusively established that Eubanks was not in Metro's paid service, and because Hinojosa did not present jurisdictional evidence to raise a fact issue as to who paid Eubanks, the trial court properly granted Metro's plea to the jurisdiction. *See Miranda*, 133 S. W.3d at 228 (if evidence is undisputed or fails to raise fact issue, plea must be determined as matter of law); *see also Poland v. Willerson*, No. 01-07-00198-CV, 2008 WL 660334, at *6 (Tex. App.—Houston [1st Dist.] Mar. 13, 2008, pet. denied) (mem. op.) (physician's affidavit stating that he was salaried employee of state-owned hospital "carried

---

[7] When asked where her paychecks, issued by First Transit, actually came from, Eubanks responded: "First Transit? I direct-deposit into my account, so I really don't look at the check." Hinojosa argues that this confusing exchange creates a fact issue, but it does not affect, much less contradict, Eubanks's clear testimony that she was paid by First Transit. *See MacDonald v. Warner*, No. 01-04-01028-CV, 2005 WL 2670932, at *4 (Tex. App.—Houston [1st Dist.] Oct. 20, 2005, no pet.) (mem. op.) (evidence physicians were salaried employees of governmental entity carried their burden of showing that they were paid employees, even though "the evidence did not provide exact details" on how they were paid; uncontroverted evidence "conclusively established that [state-owned hospital] was the governmental entity that compensated [them].").

[his] burden of showing that he was [hospital]'s employee."); *see also Fryday v. Michaelski*, 541 S.W.3d 345, 350 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (building inspector's declaration that City paid him for his services based on timesheets he submitted proved he was "in the paid service of a governmental unit").

Because Eubanks was not in Metro's paid service, she was not Metro's "employee" as that term is defined by TTCA section 101.001(2). Accordingly, we need not answer the question whether Metro had the right to control Eubanks. *See, e.g.*, *Murk*, 120 S.W.3d at 867 (holding, without addressing right-to-control prong of TTCA definition of employee, that because physician "cannot be said to have been in [governmental unit]'s 'paid service,'" physician "was not entitled to summary judgment as an employee").

Despite section 101.001(2)'s plain language requiring paid service, Hinojosa argues that a person may be an employee under the TTCA even if she is not in the paid service of a governmental unit. Specifically, Hinojosa argues that the common law "borrowed employee" doctrine applies here to negate section 101.021's paid service requirement for employee status. She points to no authority for this proposition, and the case law does not support it.

Under the borrowed-employee doctrine, an employee of one employer becomes a borrowed employee of another employer for purposes of vicarious

liability if the other employer has "the right to direct and control the employee with respect to the details of the particular work at issue." *Powell v. Knipp*, 479 S.W.3d 394, 400 (Tex. App.—Dallas 2015, pet. denied). As the Texas Supreme Court explained in *St. Joseph Hospital v. Wolff*, which employer has the right to control the work at issue determines whether an employee is a borrowed employee. *See* 94 S.W.3d 513, 542 (Tex. 2002) (plurality op.). "The right to control remains the 'supreme test' for whether the master-servant relationship exists and thus whether the rule of vicarious liability applies." *Id.* (quoting *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 290 (Tex. 1996)).

Hinojosa argues that the balancing test for determining common law borrowed-employee status—which unlike section 101.001(2), does not require paid service—applies here to create a fact issue as to whether Eubanks was Metro's common-law borrowed employee under the TTCA's immunity waiver, regardless of whether Metro paid her.[8]

We disagree that the common law borrowed-employee doctrine supplants the TTCA's mandate that governmental immunity is waived only for acts of paid

---

[8] The factors used to determine borrowed-employee status include: (1) whether the machine used by the borrowing employer is both owned by the general employer and operated by the general's employee; (2) whether the employee is expected to operate the machine in the way his general employer would expect while giving only the results called for by the borrower; (3) whether the general employer can substitute another employee at any time; (4) whether the employee is borrowed for merely a temporary period of time; and (5) whether the employee has the skill of a specialist. *See Lara v. Lile*, 828 S.W.2d 536, 538 (Tex. App.—Corpus Christi 1991, writ denied).

employees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2). The extent of governmental immunity is a matter for the legislature to decide: "[T]he truest manifestation of what lawmakers intended is what they enacted. This voted-on language is what constitutes the law, and when a statute's words are unambiguous and yield but one interpretation, 'the judge's inquiry is at an end.'" *Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 653–54 (Tex. 2013) (quoting *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013); *see also Thomas*, 30 S.W.3d at 54–55 ("We have repeatedly held that the extent of governmental immunity is a matter for the legislature to determine . . . .").

Where, as here, a statute defines a term, we are bound to construe that term by its statutory definition only. *See Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (disagreeing with court of appeals' analysis under Texas Whistleblower Act because it ignored limiting nature of Legislature's definition of "appropriate law enforcement authority," and thus impermissibly expanded statutory definition); Tex. Gov't Code Ann. § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). To accept Hinojosa's argument that the borrowed-employee doctrine overrides the TTCA's express requirement of paid service "would be to extend the waiver further than the Act provides, which we will not do." *See Thomas*, 30 S.W.3d at 54 (quoting *Dillard*,

12

883 S.W.2d at 168). As we stated in *Thomas v. Harris County*, the legislature has chosen to enact the TTCA and to waive immunity only for conduct "of an employee," as defined by section 101.001(2). *Id.* at 55 (refusing to consider independent contractor as "employee," because TTCA defines "employee" specifically to exclude "independent contractors"); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021; 101.001(2) (defining "employee").

Moreover, to the extent courts have applied *Wolff*'s borrowed-employee doctrine to determine whether a person comes within the TTCA's definition of employee, they have done so only in addressing the right-to-control prong, and never to the exclusion of the paid-service prong, of the definition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2); *see also Marino*, 526 S.W.3d at 408–09 (*Wolff*'s borrowed-employee doctrine guided right-to-control inquiry but did not displace requirement of paid service); *Murk*, 120 S.W.3d at 867 (employee status determined by applying *Wolff*'s right-to-control test in conjunction with paid service requirement).

We conclude that the TTCA did not waive Metro's immunity here, where Metro conclusively proved that Eubanks was not its paid employee.

## Conclusion

We affirm the trial court's judgment.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.